In re Estate of Sarah Flynn, Deceased.
Oak Park Hospital and Training School for Nurses of the Sisters of Misericorde, Appellant, v. Nellie Flynn Lorke, Administratrix of Estate of Sarah Flynn, Deceased, Appellee.

Gen. No. 41,146.

Opinion filed December 30, 1940.

RYAN, CONDON & LIVINGSTON, of Chicago, for appellant; JOHN M. TUOHY, JOHN J. ELWARD and ROBERT I. LIVINGSTON, all of Chicago, of counsel.

BLACK & BEERMANN, of Chicago, for appellee; BENJAMIN H. BLACK, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Oak Park Hospital and Training School for Nurses of The Sisters of Misericorde, a corporation not for profit, sole legatee under a will executed by Sarah Flynn, appeals from an order of the circuit court af-

firming an order of the probate court, denying a petition for probate of decedent's will.

There is substantially no dispute as to the facts. The last will and testament of Sarah Flynn was duly executed and witnessed in the manner required by law October 31, 1924, and it is conceded that it was at one time a valid will. Sarah Flynn bequeathed all her estate to petitioner, to the exclusion of two sisters, a brother, two nephews and two nieces. The attesting witnesses gave their oral depositions upon the hearing, and the will was offered in evidence. It appeared from the evidence, however, that subsequent to its execution the signature of the testatrix had been scribbled through with a pencil, and on the margin of the will there appeared in pencil the following legend: "Cancelled 10-28-27." The question presented is whether these circumstances constituted a revocation of the will by the testatrix. Both the probate and circuit courts, after full hearings, were of opinion that the will had been revoked.

Upon the death of Sarah Flynn, January 4, 1938, her will was found in a box of the Avenue Safety Deposit Company, in Oak Park, Illinois, by Sol Schiff, an inheritance tax examiner for the State of Illinois, who testified upon the hearing that when he took the will from Sarah Flynn's box, during the course of his examination, Miss Flynn's signature had been scribbled through with pencil marks, that the words "Cancelled 10-28-27," written in pencil appeared on the margin of the will, and that the will was in the same condition when introduced in evidence as when he found it in the safety deposit box after Miss Flynn's death. After completion of his examination of the contents of the box Schiff delivered the box with its contents to A. E. Walter, cashier of the Avenue State Bank of Oak Park, Illinois, who was also secretary of the safety deposit company, located in the same building with the bank.

A. E. Walter testified that although he had not been personally acquainted with Sarah Flynn, he knew that she had rented a vault box, of which she was the lessee on the date of her death; that he was acquainted with Schiff, who had made an examination of the contents of the box January 8, 1938, and that shortly after the examination Schiff delivered the purported will to him; that it was then in the same condition as at the time of the hearing, and that he, Walter, turned the document over to Moore M. Peregrine, attorney for the bank, who subsequently filed it for probate.

It further appears from the evidence that Sarah Flynn had the sole and exclusive right to enter the box, and that between the interval from April 28, 1927, and December 11, 1937, she had entered the box 192 times. One of the dates on which she had had access thereto was October 28, 1927, which is also the date written on the margin of the will. From that date and until her death, January 4, 1938, she had entered her deposit box 186 times.

During this entire period no one other than Sarah Flynn had ever had access to the safety deposit box, with only one exception; on the day prior to her death she had deputized Gertrude W. Gilmour, who had employed Sarah Flynn as a practical nurse during her lifetime, to withdraw some cash from the box to take care of hospital expenses incurred by decedent. Mrs. Gilmour testified that in response to a telephone call on January 2, 1938, she visited Miss Flynn at the rooming house where she resided; that upon the request of Miss Flynn she arranged for her admittance to the West Suburban Hospital, where she stayed until her death. January 3 she told Mrs. Gilmour that she had left her savings account book in the box at the Avenue State Bank and requested her to proceed to the box and take out the book and arrange for the withdrawal of cash with which to take care of her hospital expenses; that Mrs. Gilmour then procured from

Miss Flynn a certificate vesting Mrs. Gilmour with authority to enter the safety deposit box and transact the business with which she was entrusted. Mrs. Gilmour took the signed authority to an officer of the Avenue State Bank, who made arrangements for her to enter the box and remove the savings account book. She testified that she went to the box with an attendant, and with the key which had been given to her by Miss Flynn and a duplicate key in possession of the attendant, the box was opened; that she brought the box to a table just outside the door; that she then removed the savings account book at the table with the attendant standing close by, without touching or looking at any of the other contents of the box, and returned the box to the attendant, who replaced it in the vault. Miss Flynn's key was then returned to Mrs. Gilmour, who used the bankbook for the purpose of withdrawing cash from Miss Flynn's account. According to Mrs. Gilmour's undisputed testimony she neither saw nor handled any of the other contents of the box except the bankbook.

The legend on the margin of the will was written there in pencil by Fred R. Johns, president of the Oak Park Safe Deposit Company. He testified that in October, 1924, he was trust officer of the bank with which he had been associated for about 25 years prior thereto. He was acquainted with Sarah Flynn during her lifetime, and characterized her as "a friend of mine." She had an account at the bank and consulted Johns at various times about different matters. Upon an examination of the will, Mr. Johns testified that the words, "cancelled 10-28-27," were in his handwriting, and that the legend was placed there by him October 28, 1927, some 10 years prior to the date on which he testified at the hearing. He did not remember much about the circumstances under which it was placed there, but said that "evidently she brought in the will when she scratched out the name here with

her own marking and told me she wanted the will canceled, and I wrote the word 'Cancelled' and marked the date on it. I have no recollection of it. That is the way I presume it was done." Johns had no recollection of any conversation had with Sarah Flynn at the time, nor was he able to say that Sarah Flynn had made the markings through her signature on the will, but he was definitely certain that he had placed the legend on the margin of the will and that it was in his own handwriting.

Upon this state of the record, the question arises whether the will was revoked in compliance with chapter 148, entitled, "Wills" (sec. 17, par. 19, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 110.23]), which reads: "MANNER OF REVOKING WILL. No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law."

From the undisputed circumstances of the record it appears that Sarah Flynn had entered her safety deposit box on October 28, 1927, and had evidently taken the will therefrom over to Fred R. Johns, whom she knew and frequently consulted, as he testified, and on the same day the legend "Cancelled 10-28-27" was written in pencil by Johns on the margin of the will. He testified about 10 years after this event, and had no definite recollection of what had transpired, but there can be no doubt that this legend was placed on the margin of the will by Johns at the direction and request of Sarah Flynn. She had evidently taken the will to him on that date, had had some conversa-

tion with him which is not disclosed by the evidence, with the result that these words were written by him in pencil· on the margin on that date. Whether she scratched out her name at the time, or whether she did so or directed some one else to do it for her, is left to conjecture, but there can be no doubt that the words, ''Cancelled 10-28-27,'' were placed there by Johns at her direction; otherwise there is no plausible explanation for the pencil notation, and in fact Johns testified that ''he would not have put that on there without her request.'' When Schiff examined the contents of the safety deposit box he found the will in the same condition as when it was introduced in evidence, with the signature scratched out and the pencil notation, ''Cancelled 10-28-27,'' appearing on the margin, and in his written report he made the following notation: ''Will of Sarah Flynn, dated 10-31-24, 2 pages, signature on above will scratched out by pencil and notation on bottom of page (Cancelled 10-28-27).''

It is not even suggested that Mrs. Gilmour, who was the only one other than Sarah Flynn that ever had access to the box during these many years, had anything to do with the mutilation of the signature on the will. Her testimony is clearly to the effect that she was specially deputized to enter the box for a specific purpose and that she carried out her mission in the open vault with an attendant standing nearby, on the day preceding Sarah Flynn's death. It must be conceded· that Sarah Flynn entered the vaults of the safety deposit company and was admitted 192 times from April 6, 1927, until December 11, 1937; that one of these dates was October 28, 1927, which was the same date on which Johns placed the pencil notation on the margin of the will, and the will having been found in her box it is fair to assume from the record that between October 28, 1927, and the date of her death in January, 1938, she either saw or had the opportunity of inspecting the instrument in its revoked

condition at least 186 times. After her death the will is traced from the time it was found by Schiff in the box until it was filed in the probate court and introduced in evidence, and its condition and appearance, with the cancellation marks thereon, remained the same during all this time. There is no suggestion and no reasonable ground to suspect that any of the persons that handled the will following Sarah Flynn's death until it was filed in the probate court and introduced in evidence later in the circuit court had anything to do with the mutilation of the instrument.

Notwithstanding these facts petitioner contends that the will having been duly executed and witnessed in the manner provided by law, a prima facie case was established in favor of the will and that there was no evidence offered by the administratrix who resisted the probate of the will which in any way overcame the prima facie case; that there was no evidence that the will was revoked by any of the methods provided by law, and that under the circumstances no presumption of a revocation arises. Outside of the single visit of Mrs. Gilmour to the vault, the exclusive control of the vault remained in Sarah Flynn throughout her lifetime. In *Cantway v. Cantway,* 315 Ill. 244, where the will had remained in the testator's possession until his death and was found among his papers partially canceled by the erasure of the name of the devisee and the substitution of another name, the court held that by reason of the exclusive control of the document by the testator "the presumption is that such cancelation and substitution were the acts of the testator, done with the intenion of revoking the will as originally made." In *Marshall v. Coleman,* 187 Ill. 556, the court said (p. 579): "Where a will is found in a mutilated condition in the possession of a testator after the latter's death, and there is no evidence to fix the spoliation on any other person, the court will presume that it was done by the testator

with the intention of canceling the will." A full discussion of the question under consideration appears in 62 A. L. R., p. 1372, under the heading, "Presumption as to Intent," and the authorities there cited are apparently in accord in holding that "if the will remains in the testator's possession until his death, and is then found among his papers with erasures, alterations, or cancelations upon it, or it is torn, the presumption is that such act, manifest upon the will, was done by the testator with the intention to revoke it." We think the circumstances of this case fall within this rule. There is no other plausible explanation for the mutilation of the signature and the presumption as to the intent of Sarah Flynn to have the instrument canceled October 28, 1927, may be fairly invoked from the circumstances. The pencil notation in Johns' handwriting fortifies this presumption as a circumstance directly bearing on Sarah Flynn's intent to revoke the will. The burden cast upon the administratrix to show a revocation is sufficiently met by the evidence and presumption of intent arising under the law applicable to the cause.

Petitioner's counsel cite numerous cases in support of their contention that the words, "Cancelled 10-28-27," on the margin of the will cannot operate as a revocation, since they were not written by the testatrix. The statute does not require that the testator shall perform the manual revocation, but simply provides that the will may be revoked by "canceling . . . by the testator himself, or in his presence, by his direction and consent . . . ." If Sarah Flynn directed Johns to cancel the will for her that would be a sufficient compliance with the statute, and we think the evidence can be interpreted in no other reasonable way.

The judges of the probate and circuit courts, who heard the case, were of opinion that the will had been revoked by Sarah Flynn October 28, 1927, and after

a careful review of the evidence and the law applicable to the circumstances, we are of opinion that both courts properly held that the instrument was not the last will and testament of Sarah Flynn. Therefore, the order denying probate thereof is affirmed.

*Order affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.