J. J. KANE, Respondent, v. D. S. MAYHEW, DR. T. S. BOURKE, C. B. HOPKINS, MRS. C. B. HOPKINS, SISTER MARY ALPHONSE, FATHER JULIAN MOZYDLOWSKI, and FATHER JOHN J. LYONS, Appellants, No. 41377—225 S. W. (2d) 786.

Division One, December 12, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1950.

*Roy Coyne* for appellants.

*Clarence O. Woolsey* and *Rex V. McPherson* for respondent.

 BRADLEY, C.—This cause contests the probated will of Miss Sara Kane, deceased. The cause was tried before the court without a jury; the finding was that what we may term the altered will was the true will of testatrix; defendant contestees appealed. The appeal lies to the supreme court because the amount in dispute is in excess of $7500, and title to real estate is involved. We might say that this cause was tried and decided by Judge Emory Smith; motion for a new trial was timely filed. Thereafter Judge Smith ceased to be circuit judge; the motion was not ruled, but was deemed denied under Sec. 118, Laws 1943, p. 389, Mo. RSA Sec. 847.118.

Plaintiff (contestant) is the nephew of testatrix and her only heir; defendants, except defendant Mayhew, are devisees. Mayhew was named as executor in a codicil. May 27, 1946, Miss Kane, a high school teacher, executed her will, and on July 2, 1946, she executed a codicil; she died August 17, 1946. The will as originally written, witness paragraph and signatures omitted, follows:

Last Will and Testament of Sara Kane

In the Name of God: Amen

 Know All Men By These Presents, that I, Sara Kane, of Pierce City, Lawrence County, Missouri, being of sound mind and disposing memory and knowing the uncertainty of life and the certainty of death, do make, publish and declare this to be my last will and testament, hereby revoking all former wills by me made.

1. It is my desire that after my demise that the expense of my last illness, hospital bills and doctor bills, and all other indebtedness by me made be first paid and if possible out of my personal estate.

2. I give and bequeath to the Pastor (Father Julian Mozydlowski, we infer) of St. Patrick's Church, five hundred dollars ($500.00) for masses for the Kane family, to be disposed of as the Pastor of St. Patrick's Church, Pierce City, Missouri, sees fit.

3. I desire that my executor, hereinafter. named, will place a respectable marker at the grave of the Kane family, said marker not to exceed the sum of two hundred and fifty dollars ($250.00), and also two hundred and fifty dollars ($250.00) to the upkeep of the graves.

4. I give and bequeath to Father John J. Lyons, now of the St. Vincent Hospital of Monett, Missouri, the sum of one thousand dollars ($1,000.00) absolute.

5. I give and bequeath to Mr. and Mrs. C. B. Hopkins, husband and wife, of Joplin, Missouri, the sum of one thousand dollars ($1,000.00) absolute.

6. I give and bequeath to Dr. T. S. Bourke of Kansas City, Missouri, three hundred dollars ($300.00) for the kindness shown to my sister, Anna Kane, now deceased.

7. All the rest and residue of my estate I bequeath to Sister Mary Alphonse of St. John's Hospital of Joplin, Missouri, to have and to hold forever.

8. I hereby appoint Father John J. Lyons as executor of this my last will and testament, who is now at Monett, Missouri.

Signed, published and declared by Sara Kane to be my last will and testament. This 27th day of May, 1946.

The codicil made no change in the will except to name defendant Mayhew as executor instead of Father Lyons.

Testatrix's home was at Pierce City, Lawrence County, but she was in St. John's Hospital, Joplin, Missouri (Jasper County), when the will and codicil were executed, and died in this hospital. Sometime after the execution of the will it was altered and changed in many respects, but no change was made in the codicil. Testatrix kept the will and codicil in her hospital room, but who made the alterations was by no means clearly shown. Mr. Mayhew, testatrix's attorney, drafted the will and the codicil; he and Elsie McClendon were the witnesses to the will. Mr. Mayhew drew the will at the hospital, but on request of testatrix later called at the hospital; ascertained that she wanted to change the executor, and drafted the codicil at his office in Monett and mailed it to the hospital for execution. The codicil was witnessed by Mrs. Altha Gatts and Mrs. Christine O'Beirne.

August 30, 1946, the will with all the alterations and changes thereon and the unaltered codicil were filed for probate, and were probated as though the will as originally written was unaltered. Plaintiff alleged that the purported will admitted to probate was "not the will of Sara Kane and is void for the reason that the said paper writing shows on its face that it was revoked as her last will and testament by cancellation or obliteration".

The trial court found "that said paper writing dated May 27, 1946, signed Sara Kane, attested Elsie McClendon and D. S. Mayhew, and codicil dated July 2, 1946, signed Sara Kane, attested Altha Gatts and Christine O'Beirne, and admitted to probate in the probate court of Lawrence County, Missouri, on the 30th day of August, 1946, as originally written without any interlineations, is not the last will and testament of Sara Kane, deceased". The court further found "the last will and testament of Sara Kane, deceased, to be established by the will as interlined in articles 2, 3, 5, and 7, and the codicil", and that articles 4, 6, and 8 were "duly cancelled". The will

and codicil with the alterations and changes on the will were found after the death of testatrix in the hospital room occupied by her.

The original will was typewritten and is here with all the alterations and changes thereon. The preliminary paragraph, paragraph 1, and the witness paragraph of the will as originally written were unchanged. In paragraph 2 the bequest to the pastor of St. Patrick's church for masses for the Kane family was changed from $500 to $100; in paragraph 3 the limit on the cost of the grave marker was changed from $250 to $100, and the provision for $250 for the upkeep of the graves was stricken out; paragraphs 4, 6, and 8 were x-ed out entirely. In the blank space between paragraphs 5 and 6 was written: "I give and bequeath to Sr. Mary Alphonse of St. John's Hospital, Joplin, Mo.—$1,000.00." Paragraph 7, the residuary clause in the original will, read: "All the rest and residue of my estate I bequeath to Sister Mary Alphonse of St. John's Hospital of Joplin, Missouri, to have and to hold forever." This was changed to read: "All the rest and residue of my estate I bequeath to, my nephew Joseph Kane (respondent), Springfield, Missouri, to have and to hold forever." Paragraph 8, naming Father Lyons as executor, was x-ed out entirely, as stated, but apparently before paragraph 8 was x-ed out there was written in ink after the words "Monett, Missouri" therein the following: "And request that he (Father Lyons, presumably) be permitted to serve without bond." All other changes were in pencil and all the x-ing out was in pencil.

The trial court in the judgment found the true will to be as follows:

Last Will and Testament of Sara Kane

In the Name of God: Amen

Know All Men By These Presents, that I, Sara Kane, of Pierce City, Lawrence County, Missouri, being of sound mind and disposing memory and knowing the uncertainty of life and the certainty of death, do make, publish and declare this to be my last will and testament, hereby revoking all former wills by me made.

1. It is my desire that after my demise that the expense of my last illness, hospital bills and doctor bills, and all other indebtedness by me made be first paid and if possible out of my personal estate.

2. I give and bequeath to the Paster of St. Patrick's Church, one hundred dollars ($100.00) for masses for the Kane family, to be disposed of as the Paster of St. Patrick's Church, Pierce City, Missouri, sees fit.

3. I desire that my executor, hereinafter named, will place a respectable marker at the grave of the Kane family, said marker not to exceed the sum of one hundred dollars ($100.00).

4. Cancelled.

5. I give and bequeath to Sr. Mary Alphonse of St. John's Hospital, Joplin, Missouri, $1,000.00.

6. Cancelled.

7. All the rest and residue of my estate I bequeath to my nephew Joseph Kane, Springfield, Missouri, to have and to hold forever.

8. Cancelled.

Signed, published and declared by Sara Kane to be my last will and testament. This the 27th day of May, 1946:

The signature of testatrix, the witness paragraph, and the signature of witnesses, Elsie McClendon and D. S. Mayhew, are here omitted from what Judge Smith found to be the true will because, as stated, these were unchanged.

The codicil was included in what the court adjudged to be the true will, but since the codicil was not altered we do not set it out.

Appellants (proponents) went forward with the evidence; called as witnesses Oral H. McCubbin, the probate judge of Lawrence County, and Mr. Mayhew and Elsie McClendon, witnesses to the will, and Christine O'Beirne, a witness to the codicil, and Sister Mary Alphonsus (so spelled by the reporter when the witness stated her name) of St. John's Hospital, Dr. V. E. Kenney, and Mrs. C. B. Hopkins. Respondent did not call any witnesses.

Judge McCubbin testified as to the probate of the will and said that the alterations and changes on the will as above set out were on the will when it was filed for probate; that it was probated and recorded "without any changes made". Mr. Mayhew testified that he drafted the will and the codicil; that testatrix when the will was executed was of sound mind, "a very intellectual woman"; that she knew what she wanted to do "and where she wanted her money to go"; that she wanted the will "written as it was written"; that "she read it over and seemed perfectly satisfied with it"; that none of the alterations were on the will at any time he saw it prior to the death of testatrix; that he "never heard of the changes until after her death"; that after the execution of the will he went back to the hospital to see testatrix "a time or two on matters outside of the will", but that nothing on these occasions was said about the will; that he was back at the hospital after July 2d when the codicil was executed.

On cross examination Mr. Mayhew testified: "Q. Mr. Mayhew, what is your opinion as to whether or not the writing on the will is the handwriting of Sara Kane? A. I am no expert on handwriting. It imitates her handwrite but whether she wrote it or who wrote it, I don't know. That is her signature at the bottom. Q. You don't think there is any doubt but that (the alterations) is Sara Kane's handwriting? A. Yes, sir, there is. Q. Didn't you tell me and

Mr. McPherson that that looked like Sara Kane's handwriting to you? A. I testified to it just now''.

On August 7, 1946, ten days before testatrix's death she wrote Mr. Mayhew: ''Friend Sherman: I am writing you to come over the first opportunity about the property at Olathe, and abstracts and all other papers in your possession pertaining to our business. I am to have an operation here and you know what that means, so I must be prepared for the worst. Make all my arrangements for me. Nobody else will do them.'' Mr. Mayhew said the letter was mailed on August 7th; that he did not recall whether he received the letter on the same day it was mailed, or on the next day; that he did not go to the hospital ''for two days or probably three days after the letter was written'', and after testatrix ''had been operated on'', and that she was then irrational, but she said nothing about changing her will; that the will was mailed to him from Joplin, after the death of testatrix. Mr. Mayhew was recalled by defendants near the close of the case and testified: ''Q. Did you ever discuss her nephew (respondent) with her after the will was made? A. Yes. Q. What did she say about that? A. She said that Joe's father brought a suit in the circuit court on the home place and it like to ruined them; and she said she had a mortgage on the place at that time that the will was written that she had to carry.''

Elsie McClendon testified that she was a nurse's aid in the hospital and witnessed the will in the presence of the testatrix, etc.; that she helped to take care of testatrix in the hospital until the latter part of July, and that testatrix did not at any time say anything to her about being dissatisfied with the will or about any changes. On cross examination Mrs. McClendon was asked if testatrix ever talked to her about the will and answered, ''nothing more than she said her only living relative was a nephew and she didn't want him to have anything''.

Christine O'Beirne testified that she was a nurse's aid; that she and Mrs. Gatts witnessed the codicil, etc.; that she was in testatrix's hospital room only on the occasion when she signed the codicil as a witness; that the mental condition of testatrix was all right when the codicil was executed. Sister Mary Alphonsus testified that she was one of the officers of St. John's Hospital; that she had known casually the testatrix for at least 20 years; that she did not know about the execution of the will and codicil; that the first she knew about the will was after the death of testatrix; that when she found the will after testatrix's death, in a bag testatrix had in her room, it was then ''written over''; that the bag was in a closet in the room. Sister Alphonsus said that after she ascertained that testatrix had a nephew she offered many times to call him, but that ''she refused to have it''; that after the death of testatrix the nephew, respondent, called her. On cross examination she testified: ''Q. Do you remem-

ber telling Joe Kane in that conversation that you had told his aunt, Sara Kane, that blood was thicker than water? A. I wanted her to have him come to see her as he was her nephew. Q. Do you remember telling— A. And she refused. Q. Do you remember telling her that blood was thicker than water? A. I do. Q. Do you remember telling him that you told Sara Kane that this trouble that she had had really was not Joe's fault; that it was his parents' fault and that blood was thicker than water? A. Yes, sir, but she refused all the time and said, 'I want nothing to do with him or any of the family'. Q. But you tried to tell her and to get her to be friendly with her nephew? A. I did.''

Respondent's theory is expressed in the brief. He says that the court was justified in presuming that the deletions and interlineations were made prior to the execution of the codicil; that appellants did not prove that the changes found on the will were not present at the time the codicil was executed and attached thereto; that this failure on their part raises the presumption that the changes were present when the codicil was executed, and that since the codicil reaffirms the will as of the date of the codicil the will as changed should have been admitted to probate and certified to be the last will of Sara Kane rather than the original typewritten instrument; that it is apparent that the court based his ruling on the premise that the penciled deletions and interlineations on the will which were shown to be in the handwriting of Sara Kane clearly showed her intent in regard to the disposition of her property.

Respondent says that the trial court was faced with the necessity of making one of two choices, *first*, that the court could give effect to the intention of the testatrix by indulging the presumption that the penciled deletions and alterations on the will were made prior to the execution of the codicil which *confirmed* the will at the time the codicil was *attached,* or *second,* that the court could declare the will revoked under Sec. 521 R. S. 1939, Mo. RSA Sec. 521, by obliterations or cancellation and declare that testatrix died intestate. And respondent says that it was his contention at the trial that the will had been revoked.

As supporting the contention that the altered will is the true will or that the will was revoked, respondent cites: Sec. 521 of our statute on wills; Crampton et al. v. Osborn et al., 356 Mo. 125, 201 S. W. (2d) 336, 172 ALR 344; Varnon v. Varnon, 67 Mo. App. 534; Wikoff's Appeal, 15 Pa. 281; Semmes v. Semmes, et al. (Md.), 7 Harris & Johnson, 388; Worcester Bank & Trust Co. v. Ellis et al., 292 Mass. 88, 197 N. E. 637; In re Houghten's Estate, 310 Mich. 613, 18 N. W. (2d) 254; In re Rauchfuss' Estate, 232 Wis. 266, 287 N. W. 173; In re Dougan's Estate, 152 Ore. 235, 53 Pac. (2d) 511; In re Cabler's Estate, 124 Okla. 275, 257 Pac. 757; In re Semler's Will, 28 NYS (2d) 390; Thompson On Wills (3rd Ed.), Sec. 158.

Sec. 521 provides: "Revocation of wills, what will be, and how effected. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, except by a subsequent will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction." The cases excepted in Sec. 521 appear in Sec. 522, but none of these are applicable here.

We do not think that the evidence is sufficient to justify a holding that the will was revoked, or that testatrix intended to revoke it. Sec. 521 says that *no* will in writing shall be revoked except as therein provided. Some of the definitions of obliterate given by Webster's International are "to remove or destroy utterly, to blot out, to efface, render undecipherable". None of these definitions apply here. The will was not torn or blotted out.

The Crampton case, supra, contested the will of Herman S. Baker; contestants were the heirs of the testator. Contestee, Mrs. Osborn, was the former wife of testator and they were living together when the will was executed in 1914. Testator procured a divorce in 1918. Mrs. Osborn was twice married before and twice after she married testator who died in 1944. The entire will, including attesting clause and signatures, was on one page. When filed for probate there were a number of spots over its face and it appeared to have been "crinkled or crumpled". An expert on questioned documents said that age alone would not produce the condition the will was in; that it would require some physical force to produce such condition. The will "was somewhat torn and mutilated". The probate clerk said that when she unfolded it "it almost fell apart", and that she taped it. There was evidence that the testator said that "he tore the will up" and threw it in the waste basket and told his wife that he "was not going to leave her a dime"; that he accompanied such statement "with a gesture as crumpling paper"; that such statement was made about the time he was divorced. He also said that he later learned that his wife had recovered the will and that in order to have "her clear of him" he gave her $1,000 and that she promised to burn the will. The jury returned a verdict against the will; judgment followed and the judgment was affirmed.

In the Varnon case, supra, the will consisted of seven pages and was drafted by testator's brother. The next day after the will was executed testator directed his brother "to tear out the fifth page, rewrite it as it was except to omit the name of the sister", and such was done. The effect was "to cut off the sister and leave the brother as the sole legatee if the mother and son died without children". It was held that the substituted page was noneffective because the will was not re-executed and witnessed, and that the will as originally written was the true will.

Respondent cites other cases from this state; we have examined them and find that neither of them touch upon such situation as here. The cases respondent cites from other jurisdictions deal with a variety of alterations and changes in wills. There is nothing in these cases that supports respondent's contention that the true will of Miss Kane is the will as altered and changed or that the will was revoked by these alterations and changes. In the brief respondent says that ''a diligent search of Missouri cases has failed to reveal a case which is comparable to the Kane case on the facts''.

■ .Arguendo respondent says: ''It should be noted that there was no evidence in the case that the changes made on the original type-written instrument in this case were unauthorized; as the evidence clearly shows that they were made in Sara Kane's own handwriting.'' It is by no means clear that the handwriting on the will, except the signature, is the handwriting of testatrix; there was no evidence on the handwriting except that of Mr. Mayhew and he said there was doubt. It is clear that the alterations were not on the will at the time of its execution. But, as appears, supra, respondent says that appellants did not prove that the changes on the will were not thereon ''at the time the codicil was executed and attached thereto''. Mr. Mayhew said that he mailed the codicil to testatrix, hence it was on a separate paper to that of the will and there is no evidence from which a fair inference could be drawn that testatrix had the will before her when the codicil was executed or that she *attached* the codicil to the will when the codicil was executed. And there was no evidence as to *when* the alterations were made, whether before or after the execution of the codicil.

■ Respondent says that the evidence of Sister Mary Alphonsus ''convinces with undeniable force that it was the intention of Sara Kane to revoke the will''. Respondent refers to Sister Mary as a close friend, confidante and religious adviser of testatrix. Sister Mary's evidence was that her acquaintance with testatrix for the 20 years she had known her was casual, and that she did not know that there was a will or codicil until after the death of testatrix.

The altered will was not re-executed, and the evidence here, as we have ruled, is not ■ sufficient to support revocation. Hence the judgment should be reversed and the cause remanded with direction to enter judgment that the will as originally written and the codicil is the true will of testatrix. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.