FRANCIS M. WOODSON and ORION A. WOODSON, Appellants, v. CHARLES R. WOODSON, EDWARD A. LUCAS, MARGARET SCHEIBE, VOL P. LUCAS, MARY NELL ROTHWEILER, ALONZO H. OGLE, FRANKLIN ELMORAL SCHANBACHER, VIRGINIA S. HOLLEMAN,. HAROLD A. SCHANBACHER, MARIE W. DAUME, THOMAS EDGAR WOODSON, CATHERINE GREGORY, MARGARET L. KRAMER, LOLA BLUNT, LALLAH GORDON, JESSEY M. GORDON, PATRICIA LEE MORRIS, LILA ILENE MORRIS, FRANCES ISABEL WALD, C. E. RENDLEN, ALBERTINA LINK, MT. OLIVET CEMETERY ASSOCIATION, ST. MARY'S CEMETERY, IMMACULATE CONCEPTION CHURCH OF HANNIBAL, MISSOURI, REV. JOSEPH W. HELMES, BISHOP CHARLES H. LEBLOND, and AMERICAN TRUST COMPANY, Respondents, No. 42935—255 S. W. (2d) 771.

Court en Banc, February 9, 1953.
Rehearing Denied, March 9, 1953.

*Walter G. Stillwell* and *Roy Hamlin* for appellants.

*Carstarphen & Harvey* for respondent Immaculate Conception Church and others, *Charles E. Rendlen* and *Rendlen & Rendlen* for respondent American Trust Company of Hannibal.

ELLISON, J.—This is a suit brought by the two plaintiffs-appellants, collateral kinsmen of Margaret J. Rendlen, who died July 7, 1948, to contest her will dated December 11, 1939. The petition was in two counts. The first charged that the testatrix over five years later on March 31, 1945, changed, obliterated and spoliated the will, without reattestation, in such manner as to have the effect of revoking and nullifying it under Mo. R. S. 1949, §468.240, V.A.M.S. This first count was in equity praying "orders and decrees" of the court.

The second count pleaded in the alternative that if the changes did not nullify the will, it was nevertheless void because the testatrix was mentally incompetent to make and change it and was subjected to undue influence. That count was tried to a jury.

No evidence was introduced to sustain the charges in the second count, and there was substantial evidence to the contrary. In response to a peremptory instruction the jury returned a verdict finding the will as it stood before the changes were made was the testatrix' original will. The plaintiffs-appellants' petition alleged the probate court refused to probate the will as to paragraphs 4 and 4a thereof. But the transcript shows that a copy of a certificate of probate marked Exhibit B was received in evidence reciting the original will was admitted to probate.

Other collateral kinsfolk of the testatrix entered their appearance as defendants and filed answer upholding the pleaded contentions of the two plaintiffs assailing the will. The defendant cemeteries and church [and its impleaded clergymen] which benefited under the will, filed answers upholding it. And the defendant American Trust Company, named as trustee and executor in the will, answered admitting the alterations in it, and praying the court's construction and interpretation of the will, and for directions. Further, the Trust Company's answer contained a second count or cross-action again alleging the alterations in the will, and praying the judgment of the court construing it, and for directions as to the proper distribution of the estate and the funds thereof. The estate exceeded $100,-000. The original will has been sent up with the transcript.

The two attesting witnesses to the will stated that when they subscribed it the testatrix held it folded up in such manner that they could not see anything but the attesting clause, or a part thereof; and that they were then ignorant of its contents. One of these witnesses, Mrs. Irma Weber Losson, an employee of the American Trust Company of Hannibal, testified the testatrix had a lock box there, and that as soon as her will was executed she put it in the box. At that time the testatrix was seventy years old.

The will was written on a printed form of ruled foolscap paper consisting of a double sheet folded half length, making four pages. The first three contained the will. The last was the outside cover. The [773] introductory and concluding formal parts were printed and the intervening space of nearly three pages was blank and merely lined for the insertion of the provisions of the particular will. The instrument contained eight paragraphs, numbered 1 to 7, with one intervening paragraph numbered 4a and changed to 5a, or vice versa. The testatrix had a typewriter in her home. It is believed she wrote the will.

In paragraph 1 was the usual provision for the payment of just debts and expenses of last sickness and burial. Paragraph 2 contained

bequests severally to the testatrix' two brothers, Orion A. Woodson [one of the plaintiffs] and defendant Charles R. Woodson "for the sum of." That far the provision was typewritten. On the next line the following was written in ink, longhand: " ($2000.00) each, Two Thousand dollars, if living —". The figure 2 in this provision was written heavier or in darker ink than the ciphers, brackets and words following. And an inspection of the figures with a reading glass clearly shows a figure 5 underlying the figure 2. In other words, it appears an effort was made to overwrite and blot out the figure 5 and substitute the figure 2. And the ciphers and words following, "000.-00 each, Two Thousand dollars, if living—" are in lighter ink than the superimposed figure 2. When the will was probated the probate court held the sums devised in this paragraph of the original will were $5,000.00 each to the two brothers, and not $2,000.00

Paragraph 3 of the will contains seventeen lines. The first of these bequeathed to the testatrix' "neices and nephews the sum of." That far the provision was typewritten. Following on the same line were the figures and word " $200.00 each," all written longhand lightly in ink. Below that on the next sixteen lines were severally written the names and addresses of sixteen nephews and nieces in a column, all typewritten. To the right of these on each line were the figures $200.00, all written longhand in ink. But here again the figure 2 in each instance was darker and heavier than the ciphers. An examination of these under a reading glass discloses that a figure underlying the 2 had been retouched so to speak.

The probate court held the bequest to each of the first five kinsmen in the list of sixteen had originally been $700.00 instead of $200.00; that in the next eight the original bequest had been $500.00 instead of $200.00; and in the last three the bequest had been $700.00 instead of $200.00. Very plainly in all of them the initial figure 2 is noticeably heavier. That is apparent to the naked eye. In two instances the figure 7 has been converted into a 2 merely by adding a loop at the bottom, leaving the lighter top part of the 7 visible in its original form and lighter color. In two instances the light bottom part of the figure 7 projects, or is visible, below the heavier loop of the 2. Likewise in every instance except one where the figure 5 had originally been written, some part of it is still visible under the 2. From all this it is apparent that some systematic change has been made in all of these initial figures in the several bequests, for they are much darker than the other digits.

In paragraph 4 the bequest to a brother and two sisters of the testatrix' deceased husband is all typewritten, including "for the sum of". Following that in handwriting in ink are the figures and words: " ($25.00) each. If living." But an effort had been made to eliminate this part by friction with an eraser or by some chemical. It cannot be determined whether the same or other figures originally were there.

Following this, paragraph 4a or 5a, whichever it is, bequeaths to the testatrix' sister-in-law "the sum of." That far the provision is typewritten. Next after that, in the testatrix' handwriting in ink, are the figures and words "$200.00 If Living." Under the heavier figure 2 is a 7.

The remaining four paragraphs of the will are typewritten. They provide for the upkeep of the testatrix' deceased husband's grave in Mt. Olivet Cemetery; place her residuary estate in trust for the upkeep of St. Mary's Cemetery and the "Woodson lots therein; any residuum to be devoted to repairs and upkeep of the Immaculate Conception Church in Hannibal." The last paragraph appoints the American Trust [774] Company of Hannibal as executor and trustee of the trust fund created by the will.

The will as thus written covered only about 1-½ pages of the printed form, and at the bottom of the third page was dated December 11, 1939, signed by the testatrix and attested by the two witnesses. But in the ample blank space above the testatrix' signature to the will and the attestation, the testatrix inserted a signed longhand "explanation" over five years later on March 31, 1945, as follows:

"In explanation, of 'Woodson Lots' they are the lot where my Mother, Brother Cleaver, and a neice, Bessie Lou Ogle are buried and—the lot where my brother Peyton and his wife Erwina, are buried— I would like for both to have good care—also, I have to-day March 31st, 1945, made a change in gift amounts, to all the neices, and nephews and brother and sisters of my deceased husband George Rendlen, as it can be so discerned. Signed "Margaret J. Rendlen."

There was no attestation by subscribing witnesses of this "explanation" or the changes in the "gift amounts" referred to therein and inserted in the will. But one of the attesting witnesses to the original will, Mrs. Irma Weber Losson, testified she was present when the testatrix came to the banking office of the American Trust Company in Hannibal to get her will, which was kept there in a safety deposit box. Mrs. Losson stated the testatrix told her she was going to change her will. At that time she (Mrs. Losson) saw the first page of the will, and there were no changes on it, such as appear on that page now. The will was returned to the bank box later at some undetermined time, and after the testatrix' death in July, 1948, was found there with the foregoing changes in it.

At the conclusion of the proponents' evidence the contestants asked the court to give three declarations of law severally declaring that the will dated December 11, 1939 and altered on March 31, 1945, was not the last will of the testatrix because: (1) it was not thereafter re-executed, re-witnessed or re-published; (2) that the obliterations therein had the effect of revoking it; (3) and the burden was on the proponents to prove and establish the will as of December 11, 1939, the date of its original execution, which they had failed to do.

All of these were refused by the trial court. At the close of all the evidence the contestants asked for a declaration by the court that the proponents had failed to prove and establish the contents of the will as of December 11, 1939. This declaration also was refused.

The court held the question of interlineation or alteration of the will was a matter involving equity principles for determination by the court and not the jury. And at the close of all the evidence it gave two declarations requested by the proponents stating there was insufficient evidence to prove undue influence or mental incapacity, and directed the jury to find the original will dated December 11, 1939 was the last will of the testatrix. The jury returned a verdict so declaring. Thereupon the court rendered a judgment interpreting the original will in the light of the interlineations and erasures that had been made therein. With respect to the several paragraphs, or clauses, the court made the following rulings:

Paragraph 2. The bequests to the testatrix' two brothers were established at $5,000 each as originally written in longhand, instead of $2,000 as changed.

Paragraph 3. The longhand bequests of $200.00 each to the testatrix' sixteen nieces and nephews, as substituted longhand by the testatrix on March 31, 1945, were rejected and the respective amounts shown in longhand in the original will were reinstated, these being: $700.00 each for the first five in the list; $500.00 each for the next eight; and $700.00 each for the last three.

Paragraph 4, bequeathing in longhand $25.00 each to the brother and two deceased sisters of the testatrix' deceased husband, if they survived her, was rejected in toto on the ground that the amount thereof was [775] so obliterated as•to make it unascertainable whether it was an original or inserted bequest.

Paragraph 4a (or 5a) bequeathing in longhand to the testatrix' sister-in-law Mrs. Emma Woodson of Hannibal $200.00, if living, was changed to $700.00 as originally written longhand. Paragraphs 5, 6 and 7, all typewritten, were left as originally written.

It is conceded that the changes in the original will made by the testatrix on March 31, 1945, were ineffectual because the will was not thereafter attested by two or more witnesses as required by Mo. R. S. 1949, §468.150, V.A.M.S. The fundamental issues in the case are whether the testatrix by making the changes intended to *revoke* in toto the will as originally written, or if not, whether the changes mutilated and obliterated the original will [which was duly attested] to such extent as to make it virtually impossible to ascertain the contents and meaning thereof.

On the first point, we think the evidence clearly discloses the testatrix did not intend to revoke her original will as a testamentary instrument. The signed "explanation" she appended to it on March 31, 1945, shows that. Therein she referred to the "Woodson Lots"

previously mentioned in the original will, told who were buried there, and said she wanted the lots to have "good care." To this she added a sentence: "Also, I have today, March 31st, 1945, made a change in the gift amounts, to all the neices and nephews and brother and sisters of my deceased husband George Rendlen, as it can be so discerned." This shows the testatrix thought her original will was and would continue to be in force without re-attestation and that it would pass the changed amounts specified therein to the designated beneficiaries along with its other provisions. But that falls far short of establishing that she intended to revoke the original will. She simply was ignorant of the statutory requirement as to re-attestation. And for want of that the *law* made the changed part of the will void. That, however, was not true as to the original will, which was duly attested.

On this issue appellants cite the authorities listed below.[1] Of these the Annotation in 67 A.L.R., p. 1138, states the view has been expressed [citing a New York case] that "after a will is signed, published and attested, the testator may absolutely revoke it by destruction, or annul or modify it by another writing executed with the formality prescribed by law, but he cannot otherwise, by one jot or tittle, vary its terms, either by additions, interlineations, obliterations, erasures, or other changes upon its face, or by the subsequent preparation of unattested papers, designed to supplement its provisions, * * * ."

Continuing the same Annotation states [p. 1140] "It is the general rule that where an alteration of, or interlineation in, a will, requires some explanation, the burden of proof is upon the person presenting the will for probate to show that the alterations or interlineations appearing on its face were made before the will was executed."

Still further appellants' brief quotes an Annotation in 62 A.L.R., p. 1381, stating: "In this respect it is noteworthy that, while intent to revoke the will as a whole is generally essential to effect that purpose, yet this is not always the case, for a will may be held to have been revoked where it has been so mutilated that the portion remaining, if probated, would cause a devolution of the property of the decedent entirely different from his expressed intent."

All these quoted statements of the law may be conceded, but they are not controlling here. As to the first, respondents concede testatrix' effort to change the bequests in the will was ineffectual because [776]

(1) 67 A.L.R., 1138; 62 A.L.R., 1381;
Menzie v. White, 360 Mo. 319, 324(2), 228 SW.(2d) 700, 701(2);
Ray v. Walker, 293 Mo. 447, 463(1), 240 SW. 187, 191 (1, 2);
Avaro v. Avaro, 235 Mo. 424, 138 SW. 500;
Mort v. Trustees, 229 Mo.App. 632, 637(7), 78 SW.(2d) 498, 501(7);
Southworth v. Southworth, 173 Mo. 59, 74(3), 73 SW. 129, 134(7);
Drew v. Platt (Mo.App.) 52 SW.(2d) 1041, 1043 (2, 3);
Varnon v. Varnon, 67 Mo.App. 534;
Henry v. Fraser, 58 App.D.C. 260, 29 Fed.(2d), 633, 62 A.L.R. 1364.

the changed instrument was not re-attested as required by the statute. But the very changes in the figures themselves presupposed the original attested will in which they were inserted was the instrument by which her wishes would be carried out. In other words it was still her will. That plainly was the testatrix' understanding and intent. And if she thought she could incorporate them that way along with the other provisions of the original will, she was not revoking it, although the law made the changes ineffectual.

We shall only summarize briefly the first four of the Missouri decisions cited above[1] by appellants. The *Menzie* case merely involved the question whether the revocation by a testatrix of one of two original duplicate copies of her will made thirteen years earlier, revoked the other duplicate copy. A jury had decided as a fact that she had revoked it. It is not in point. The *Ray* case merely dealt with the insufficiency of the testimony offered by one of the two subscribing witnesses to prove the attestation of a will. And the *Avaro* case held the signature alone of a witness was a sufficient attestation of a will when accompanied by his oral validating testimony. In the *Mort* case the testator left two wills of different dates disposing of the same property. The second will was held void for uncertainty, but the decision nevertheless ruled that it revoked the first will leaving the property to a different beneficiary.

In the *Southworth* case a will was admitted to probate in solemn form despite a direction therein that it should not be probated, that direction being scratched out after the will was signed and attested. This court held the non-probating clause was void as the law requires all wills to be probated. Also the name of the executor was omitted from a blank line therefor in the original will and was wrongfully inserted the day after its execution without re-publication. That insertion was stricken out in this court but the will was probated notwithstanding.

In the *Drew* case the testatrix' will devised real estate to "my dear friend" B for life, with remainder to "my husband" if he survived her, and if not then to "my children" equally. Her husband did not survive her. When the will was probated it was found that the words "my dear friend" had been stricken with a pencil along with the word "husband", after which was inserted in pencil "sister Sarah C. Drew." Following that the rest of the "item", or clause, had lines drawn through it with the word "omit" on the margin. These alterations and interlineations in the will were not attested. The attesting witnesses disclaimed any knowledge of them. The probate court admitted the will to probate "irrespective of all erasures and interlineations therein contained," thereby displacing and nullifying the inserted bequest to the testatrix' sister Sarah C. Drew [in place of her deceased husband], and reinstating the prior alternative bequest to the testatrix' children. We think this Drew case is authority

here on the point that the original will was valid notwithstanding the attempted alterations.

In the *Varnon* case the testator's will provided his property should go to his widow and son in equal parts, or if the wife died first it should go to the son,* or if the son died first it should go to the widow. And if both died without children the testator's brother *and sister* were to take the property. These provisions up to the point we have marked with an asterisk were on page 4 of the will. Those following were on page 5. The next day the testator's wife objected to the provision for his sister. He thereupon caused the entire fifth page to be torn out of the will and re-written omitting only the provision for his sister, which was done without re-attestation of the will. The trial court rejected this entire unattested new fifth page and established the rest of the will.

The Court of Appeals opinion in reversing the cause cited the then statute, now R.S.Mo. 1949, §468.240, V.A.M.S., specifying how a will may be revoked, and held it meant "there may be a partial revocation of a will, the balance remaining intact;" and that there was no reason why [777] this might not be accomplished by tearing out a page or portion intended to be revoked. Further, the opinion declared that "when a revocation is made with a view to an immediate, other and different disposition, the revocation becomes dependent upon the efficacy of that other disposition." But it held that "the substituted page five was non-effective, since the will, as changed, was not re-executed or witnessed in any way known to the law," and only the original will could stand. However the original page 5 of the will had been destroyed. But at the trial proof of its contents had been made. The decision ruled this was sufficient to establish the provisions of the will, and the cause was reversed and remanded to the trial court to enter judgment establishing the will as originally written. This case has since been cited 21 times, mostly in annotated case works.

Another decision cited by appellants is Henry v. Fraser, 29 Fed. (2d) 633. In that case the will had been written on two will form sheets, partly printed and partly blank for the reception of the provisions of the particular will, the two sheets being fastened together. All the testamentary provisions of the will were written on the first sheet. The second sheet contained only a residuary clause to two nephews at the top, followed by the nomination of executors and the signatures of the testatrix and the two attesting witnesses. Later the testatrix detached and destroyed or lost the first sheet and substituted another containing her signature and many specific bequests, without advising the witnesses thereof and having the will re-attested.

It was ruled, and we think properly, that the new or changed instrument was not entitled to probate as her last will, for want of publication and attestation. But the facts there were vastly different from those here. In this case it is not sought to probate the changed

unattested will, but the original attested will with all its original figures, except paragraph 4 which the trial court rejected in toto on the ground that the original amount specified therein could not be determined.

Appellants' brief merely cites two Kansas cases without discussion. Both citations are incorrect and we have failed to find the decisions. Also two other cases are cited: one is Tinsley v. Carwile, 212 Ind. 675, 10 NE. (2d) 597. In that case the testator had drawn diagonal intersecting lines across each of two pages of his will and wrote the word "void" above his initials. Held: this was sufficient to mutilate the will and constituted a revocation thereof. The other case is In Re Flynn's Estate, 307 Ill. App. 582, 586, 30 NE. (2d) 970, 973. It held that where a will was found in mutilated condition in the possession of the testator after his death, and there was no evidence to fix the spoliation on any other person, the court would presume it was done by the testator with the intent to cancel the will. But the spoliation in that case was an outright cancellation endorsed on the will "Cancelled 10-28-27" and corroborated by other evidence.

In the instant case there was no complete obliteration of the will except as to paragraph 4, and the testatrix' "explanation" endorsed on the will shows she intended the original will to remain in effect with the "gift" amounts changed. Such changes come within the doctrine of dependent relative revocation. That is to say, while the testatrix here intended to "revoke", in the sense of change, the *amounts* of particular original bequests and to substitute different amounts in their stead, yet since the attempted changes were inoperative for failure to have the will re-attested, the amounts originally specified in the will remained in effect if ascertainable. Annotations: 62 A.L.R., p. 1401; 115 A.L.R., p. 721. This doctrine was followed in the Varnon case, supra. See also: Kane v. Mayhew, 359 Mo. 1140, 1147-9(3), 225 SW. (2d) 786, 791-2; Carpenter v. Wynn, 252 Ky. 543, 67 SW. (2d) 688, 690-1(4, 5); Bigelow v. Gillott, 123 Mass. 102, 25 Am.Rep.32; 33 Harvard Law Review, 337, 338(1); 68 C.J., p. 815, §510.

The basic evidence in this case was documentary and undisputed. The appellant-contestants' original contention that the [778] testatrix lacked mental capacity to change the will was abandoned. We hold the trial court did not err in refusing to give their proffered declarations of law No's 1 and 2 at the close of the proponents' case; declaration of law No. 3 at the close of the whole case; and their peremptory instruction No. 4 at the close of the whole case directing the jury to find the will as changed was not the last will of the testatrix.

We find no error in the record and the judgment is accordingly affirmed. All concur.