**Russell B. OLIVER, Plaintiff-Appellant,**

v.

**The UNION NATIONAL BANK OF SPRING-FIELD, Missouri, Executor of the Estate of John H. Sparling, et al., Defendants-Respondents.**

**No. 9454.**

Missouri Court of Appeals, Springfield District.

Jan. 8, 1974.

Bob J. Keeter, Schroff, Keeter & Glass, Springfield, for plaintiff-appellant.

John C. Crow, Hamra & Crow, Springfield, for defendant-respondent, The Union National Bank of Springfield, Missouri.

BILLINGS, Judge.

This case comes to the writer on reassignment and involves the question of alterations made to a will by the testator subsequent to the execution and attestation of the will. The trial court ruled that the unattested alterations eliminated plaintiff as a beneficiary under the will. We are of the opinion that the alterations are invalid and that the will is to be construed as originally written and therefore reverse.

Paragraph four of the typewritten will of John H. Sparling as originally written executed and attested, reads as follows: "All of the rest, residue and remainder of my Estate . . . I give to the Union National Bank of Springfield [hereinafter Bank], as Trustee upon the following terms:

\*     \*     \*     \*     \*     \*

c. Upon the death of the survivor of my two daughters, I direct the Trustee to

terminate the Trust and to distribute the balance as follows:

\* \* \* \* \* \*

(2) Remaining Nine-tenths (9/10) to be equally divided between the ten (10) children of my two sisters or to their survivors should any of them die prior to the termination of this Trust, to wit, Herman Plumb, Henry Plumb, Helen Plumb Yager, June Plumb Chaney, Russell Oliver [plaintiff], Mabel Oliver, Bettie Oliver Seichepine, Jimmie Akridge, Sarah Lenora Adridge Herbert, Ruth Akridge Hayes."

At some date subsequent to the due execution and attestation of the will Sparling wrote the word "nine" over the word "ten" and wrote the figure "9" over the figure "10" in the foregoing paragraph and at the same time marked through and circled the name "Russell Oliver". This was stipulated to by the parties and it was further stipulated that Sparling made these changes "with the intent and for the purpose of eliminating Russell Oliver as one of the distributees of the remaining nine-tenths (9/10ths) of the corpus of the estate; intending that the part of paragraph 4(c)(2) of the will which provided that Russell Oliver would receive an equal share of said remaining nine-tenths (9/10ths) be revoked, but intending that no other part or portion of said will be revoked." The trial court's judgment was based upon the pleadings, the stipulation of the parties, and the will of the testator.

Plaintiff contends that since the inked, handwritten changes in the original will were unattested they were ineffective and under the doctrine of dependent relative revocation the will is to be construed as originally written. The Bank, executor and testamentary trustee, seeks to uphold the determination of the trial court under the doctrine of partial revocation.

The Bank relies upon § 474.400, RSMo. 1969, V.A.M.S., which provides: "No will in writing, except in the cases herein mentioned, nor any part thereof, shall be revoked, except by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction." Varnon v. Varnon, 67 Mo.App. 534 (1896), is cited as construing the statute as authority for partial revocation of a will with the remainder of the will remaining intact. *Varnon* is authority for that proposition but further holds that *"when a revocation is made with a view to an immediate, other, and different disposition, the revocation becomes dependent upon the efficacy of that other disposition."* Id., at 537 (our emphasis). Applying the latter rule the court in *Varnon* held that where a testator tore out the fifth page of his will and substituted a new page which was not "re-executed or witnessed in any way known to the law" [the substituted page omitted the name of a sister who was named as a beneficiary in the original page], id., at 537–538, page five as first written was not revoked and remained a part of the will. In so concluding the court stated (l.c. 538): "He only intended . . . to omit the name of his sister, so that she might not, in the contingency of the wife and son dying without children, become a beneficiary of the estate. In other words, he only intended to revoke page 5 by the immediate substitution of another page with the change indicated. His intention to revoke depended upon, and was intended to be made by, the substituted paper. If that was ineffective, then no revocation was had."

The Bank, in urging a valid partial revocation, emphasizes that it was admittedly the intent of the testator in this case to revoke that part of his will making provision for the plaintiff and that he did not intend revocation of any other portion of the will. In support of this proposition the Bank argues that "it is clear that the intent to revoke was not conditioned on any new or different disposition" and therefore the doctrine of dependent relative revocation is not applicable. The Bank does not address itself to the conceded fact that the alterations made by the testator to his original will were not attested as required by law.

In our opinion the unattested alterations made to the will would not only eliminate the plaintiff as a beneficiary under the will but would also increase the shares of the testator's estate going to the other beneficiaries named in the paragraph and that such modifications and changes would constitute a new and distinct testamentary disposition of testator's estate, and, consequently attestation as prescribed by § 474.320, RSMo. 1969, V.A.M.S., was required to make the changes legally effective. This statute provides: "Every will shall be in writing, signed by the testator, or by some other person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." This section is mandatory, its purpose being to prevent fraud and uncertainty in the transfer of property by will. Morton v. Simms, 263 S.W.2d 435 (Mo.1953); Wright v. McDonald, 361 Mo. 1, 233 S.W.2d 19 (banc 1950). And, for a will to be valid under the statute it must be executed and attested in the prescribed manner. The primary purpose of requiring that a will be attested is to render available proof that there has been a compliance with the statutory requisites of the execution of a will and that the instrument offered for probate is the exact paper which the testator signed. 57 Am.Jur., Wills, § 286 (1948).

The authorities are generally in accord that once a testator's will has been duly executed and attested he cannot vary the terms of his will by additions, interlineations, obliterations, erasures, or other changes made on the face of the instrument which give a new meaning to the part altered or to other provisions of the will, unless such changes are executed and attested in the manner provided by law for the making of a will, or the will is republished and attested in its amended form. See cases collected in Annotations, 62 A.L.R. 1367 (1929); 67 A.L.R. 1138 (1930); 115 A.L.R. 710 (1938); 24 A.L.R.2d 514 (1952); 34 A.L.R.2d 619 (1954). Where, by the substitution of certain words for others, a different meaning is imparted, there is something more than a revocation. "There is a transmutation by which a new clause is created. There is another and a different testamentary disposition, which, to have validity, must be authenticated by the observance of the statutory requirements for the execution of wills. Even though a will may be revoked in part, this doctrine is not extended so as to sustain a will which is obliterated in such a manner as to impart a different meaning to other portions thereof. Such is not a mere revocation; it is an alteration—a new and distinct testamentary disposition—which must be authenticated in the manner required for the execution of a will in order to be effective." 57 Am.Jur., Wills, § 508 (1948).

The Bank relies on the case of In re Estate of Erbach, 41 Wis.2d 335, 164 N.W.2d 238 (1969), to support its theory of partial revocation of the testator's will in the instant case and thus give effect to the will as changed by the inked alterations. The testatrix in *Erbach* had made similar alterations to her 1945 will subsequent to its due execution and attestation. However, a close examination of *Erbach* reveals two things: first, that Wisconsin follows the rule that interlineations made subsequent to the proper execution of a will have no effect and that the will is to be construed as it was originally written; secondly, that the changes made by the testatrix in her 1945 will had been validated by a validly executed codicil of 1966. The case is no authority for the Bank's contention.

Having determined that changes made by the testator in the instant case do not constitute a valid partial revocation but constitute abortive alterations which would impart a new and different meaning to the disposition of his residuary estate, we now consider whether the doctrine of dependent relative revocation is applicable. This doctrine, although not called such but nevertheless applied in Varnon v. Varnon, supra, is stated in the annotation in 62 A.L.R., su-

pra, at 1401, as follows: "When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force. This rule is styled the doctrine of dependent relative revocation. It is based upon the presumption that the testator performed the act of revocation with a view and for the purpose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged, in the absence of any known and sufficient reason for changing them." See later annotations in 115 A.L.R., supra, at 721, 24 A.L.R.2d, supra, at 554; see also 57 Am. Jur., Wills, supra, §§ 514 and 516.[1]

The Supreme Court applied this doctrine in an en banc decision in Woodson v. Woodson, 363 Mo. 978, 255 S.W.2d 771 (banc 1953). In Woodson the testatrix had, subsequent to the execution and attestation of her will, made certain alterations to the will by writing over and changing figures of several bequests. In holding that the unattested alterations did not constitute a revocation of the will and that the will as originally written controlled, the court said (at 987, 225 S.W.2d at 777): "Such changes come within the doctrine of dependent relative revocation. That is to say, while the testatrix here intended to 'revoke', in the sense of change, the amounts of particular original bequests and to substitute different amounts in their stead, yet since the attempted changes were inoperative for failure to have the will reattested, the amounts originally specified in the will remained in effect if ascertainable."

In this case Sparling intended to omit the name of plaintiff, as the testator in Varnon v. Varnon, supra, intended to omit the name of his sister. Where as in Varnon, supra, 67 Mo.App. at 538 "[the] intention to revoke depended upon, and was intended to be made by, the substituted paper", testator Sparling's intention to revoke depended upon, and was intended to be made by, the inked alterations. Like the testatrix, in Woodson, supra, 363 Mo. at 987, 255 S.W.2d at 777, testator Sparling "intended to 'revoke', in the sense of change, the amounts of particular original bequests and to substitute different amounts in their stead . . ." Since, as both in Varnon and Woodson, the attempted changes by testator were "inoperative" and "ineffective" for failure to have the will re-attested, no revocation was had and if ascertainable the will as originally written remained in effect.

Here the amount (nine-tenths 9/10) to be equally divided between the number (ten–10) of named beneficiaries (including plaintiff) are readily ascertainable from Sparling's original will. We therefore hold that the trial court erred in its judgment and that plaintiff Russell Oliver is a beneficiary of and to the amount specified in paragraph 4(c)(2) of the will of John H. Sparling as originally written.

1. The doctrine of dependent relative revocation is also called "provisional" or "conditional" revocation. 57 Am.Jur., Wills, § 514. Professor Thomas E. Atkinson, in concluding that "In the main the doctrine is a fictional process which consists of disregarding revocation brought about by mistake on the feigned ground that the revocation was conditional", states there are few cases where there is actually a conditional frame of mind on the part of the testator in connection with a revocation. Atkinson is of the view that in actuality most cases arise where the revocation was induced by some mistake of law or fact on the part of the testator and that such cases of mistaken revocation are lumped under the classification of dependent relative revocation. Atkinson, Handbook of the Law of Wills, 2nd Ed., § 88 (1953).

In view of the foregoing determination we do not deem it necessary to consider plaintiff's additional point that the lower court erred in its construction of the order of the probate court admitting the will to probate. Having ruled that Sparling's will is valid and effective as originally written, without the alterations and changes, this point is moot.

The judgment of the lower court is reversed with directions to enter a new judgment consistent with this opinion.

TITUS, C. J., STONE and HOGAN, JJ., and KIMBERLIN, Special Judge, concur.