## WELPTON v. JAMESON.

No. 43956.

Supreme Court of Missouri.

Division No. 2.

April 12, 1954.

Everett E. Teel, Nevada, for appellants.

A. E. Elliott, Lynn M. Ewing, Nevada, for respondent, Ewing, Ewing & Ewing, Nevada, of counsel.

WESTHUES, Commissioner.

This is a suit to set aside two deeds executed by Phenia Floyd, deceased, conveying to the defendant two tracts of land in Vernon County, Missouri. Plaintiff, the sister and only heir of Phenia Floyd, charged fraud, undue influence, and lack of consideration as grounds to have the deeds annulled. The trial court granted plaintiff the relief prayed for and the defendant appealed.

Phenia Floyd, a single person, 79 years old, lived on an 80-acre tract of land near Nevada, Missouri. Mrs. Hattie Fredericks lived with her. On April 9, 1953, Miss Floyd had a fall and injured her hip. Dr. W. S. Love, who treated her, made several visits to her home. He testified that Miss Floyd did not want to go to a hospital or have X rays taken. In his opinion the injury consisted of a broken hip. On April 13, Miss Floyd was taken to the home of the defendant who claimed to be a "Doctor of Swedish Massage." The deceased re-

mained with the defendant until her death on May 11, 1953. Dr. Love testified that he saw Miss Floyd a number of times at defendant's home and that about May 9 she grew much worse and died on May 11.

When Miss Floyd was taken to defendant's home, the defendant was paid $100 for a month's keep and also $30 for incidental expenses. Miss Floyd was in bed all of the time that she was at defendant's home.

On April 14, Miss Floyd requested a Mr. Story, who had taken the deceased to defendant's home, to ask Mr. A. E. Elliott, a lawyer, who had transacted·business for the deceased, to come to see her. Mr. Elliott did so and a will was prepared by him. This will was signed by Miss Floyd with Mr. Elliott and the defendant signing as witnesses. Miss Floyd, by this will, devised her property to her sister for life and the remainder to the Methodist Church in Nevada and to the Methodist Orphan Home Association in St. Louis, Missouri.

The plaintiff was in a hospital in Kansas City, Missouri, at the time her sister was injured. She was brought to Nevada a few days before Miss Floyd died. Plaintiff was unable, due to her illness, to visit her sister. She testified that she heard of the fall and of her sister's being at defendant's home.; that she wrote her sister a number of letters. It was in evidence that the two sisters were on very friendly terms and that they helped each other from time to time.

The lawyer who prepared the deeds at defendant's request was called as a witness for plaintiff. From his evidence we learn the following: The lawyer was a stranger to the deceased and had never attended to any legal matters for her. In fact, he did not know her. On May 4, the defendant went to the attorney's office with a description of a tract of land owned by Miss Floyd and informed him that Miss Floyd had requested that a deed be prepared conveying the land to the defendant. A deed was prepared and the attorney, as a notary public, filled out the acknowledgment on the deed and placed his notary seal thereon al-

though he never saw or talked with Miss Floyd. He instructed the defendant to have Miss Floyd sign the deed in the presence of two witnesses. The deed was purported to have been signed by Miss Floyd but no witnesses' signatures appeared thereon. On May 6, the defendant again went to the office of the attorney with another description of property owned by Miss Floyd. The same procedure was followed in preparing a deed as that of May 4 with the same result. These are the two deeds sought to be set aside by this suit. The defendant also went to the lawyer's office with information as to the exact balance Miss Floyd had in a bank. A check was prepared payable to the defendant and the bank cashed the check, paying the defendant the amount thereof, that is, $1,283.44. The defendant and her husband also went to the home of Miss Floyd and carried away personal property consisting of a radio, furniture, a cow, a calf, feed, and other articles. What was left in Miss Floyd's home was valued at $148.25 in the inventory of her estate.

It is defendant's contention that Miss Floyd deeded the property to her under an agreement that the defendant was to care for the deceased for the balance of her life. The evidence to support such a contract was certainly not convincing. The trial court's comments concerning the witnesses who testified about such an agreement were as follows:

> "The main two witnesses for the defendant were Lucille Howell and Grandma Angel. Both of those two witnesses are patients of the defendant. Mrs. Howell had been taking treatments there for a nervous breakdown and Grandma Angel is now a patient down there. From their appearance on the stand I think they were both absolutely under the control of the defendant—* * *."

The record lends support to the trial judge's comments. Sophia Angel, age 86, was one of these witnesses. She lived at defendant's home. The evidence favorable to the defendant given by this witness was

extracted by very leading questions, often suggesting the answer desired. It was defendant's contention that Miss Floyd tore up her will. Note the witness' evidence on this point:

"Q. I am not just positive about this myself but did Miss Lucille Howell and Mrs. Jameson come in the room where Miss Floyd was, with a deed and you were already there? A. Yes.

"Q. Did Miss Floyd look at this deed before she signed it? A. She sure did.

"Q. What did she do? Just tell the Judge here what she did? A. Well, she took it and she tore it all to pieces.

"Q. Are you talking about the deed or the Will? A. The Will.

"Q. We are talking about the deed now. After you had this conversation with her and you said she told you she wasn't going back home and that she was going to turn everything she had over to Mrs. Jameson, is that right? A. Yes."

Mr. A. E. Elliott, who prepared the will, was a witness. He testified he had known Miss Floyd for forty years and had handled her business. He stated that after he and Mrs. Jameson witnessed the will, "She (Miss Floyd) put it (original) in her satchel she had there with her," and he kept a copy. His testimony was that he called the defendant after Miss Floyd's death and reminded her that she was a witness to the will; that the defendant told him, "Well, she tore the Will up."; that he asked her what she did with the pieces and defendant replied, "*We* burned them up." (Emphasis ours.)

Other witnesses testified that the defendant told them she had bought the property from Miss Floyd. Defendant also introduced evidence that Miss Floyd was not on friendly terms with plaintiff, her sister; Grandma Angel testified the deceased had stated to her while at defendant's home that plaintiff had been mean to her and had not "been about her" for years. There was an abundance of evidence that the two sisters were on friendly terms and visited each other frequently.

The trial court also found that the deeds were without consideration. Note the court's comments as to this question:

"Now from there on, gentlemen, as the court sees it, as to the consideration for these deeds, the $1283.44 in cash she received and all of the personal property out there that Mrs. Jameson received there is absolutely no consideration whatever for any of those transactions."

That conclusion is supported by the evidence. The defendant was paid for keeping the deceased for all of the time she was there.

Defendant says that to justify cancellation of a deed, the evidence should be clear, cogent, and convincing, citing McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698. Defendant also says that "To raise a presumption of undue influence, as contended by plaintiff, there must be both confidential relationship and facts and circumstances tending to show undue influence." Citing Ulrich v. Zimmerman, 349 Mo. 772, 163 S.W.2d 567, 574; Lastofka v. Lastofka, 339 Mo. 770, 99 S.W.2d 46. We have no fault to find with the rules of law contended for by defendant or the cases cited. The circumstances under which the defendant in this case acquired the property of her patient are in themselves sufficient to throw suspicion on the legality of the transactions. In just a few days after Miss Floyd entered defendant's home, she was stripped of all of her property. Her will was destroyed. A lawyer strange to Miss Floyd was employed by defendant to prepare the deeds. The acknowledgments were taken by hearsay only. There is doubt whether Miss Floyd ever signed the check whereby defendant drew from the bank every penny of her patient. The trial court made statements in his comments concerning the check stating that if the case were appealed he "would like to see this original exhibit, Plaintiff's Exhibit 'A', the

check for $1283.44, go on up to the Supreme Court * * *." (The original exhibit is not here for our inspection.) Further comment was "Gentlemen, if there ever was a case made on undue influence and domineering an old person 79 years old there certainly is in this case." The record supports the conclusions of the trial court.

Defendant contends that plaintiff's petition did not state a cause of action. It was not pointed out wherein the petition was defective. We have examined the petition and deem it sufficient to support the judgment entered.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.