The BOARD OF TRUSTEES OF the METH-
ODIST CHURCH OF NEVADA, Missouri,
and The Methodist Children's Home of Mis-
souri, a Corporation, Plaintiff-Appellant,

v.

Kathleen Floyd WELPTON, Defendant-
Respondent.

No. 44643.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

Jack P. Pritchard and Donald B. Russell, Pritchard & Russell and James E. Woodfill, of counsel, Nevada, and Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel, for appellants.

A. E. Elliott, Lynn M. Ewing, Nevada, for respondent.

HOLMAN, Commissioner.

■ Action to establish the last will and testament of Phenia Floyd, deceased. At the close of plaintiffs' evidence the court sustained defendant's motion for a directed verdict. The jury accordingly returned a verdict to the effect that the paper writing in evidence was not the last will and testament of said decedent. From the ensuing judgment plaintiffs have duly appealed. We have jurisdiction since the purported will devises real estate to plaintiffs and hence "the title to real estate" is involved, within the meaning of Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S. Const.

Miss Phenia Floyd, an elderly lady, lived on her farm in Vernon County, Missouri. On April 9, 1953, her physician, W. S. Love, was called to the farm and found that Miss Floyd was suffering from what ap-

peared to be a broken hip. He was unable to give her any effective treatment because she refused to go to the hospital so that she could receive an X-ray examination. On April 19, Dr. Love saw her again, at which time she was at the home of Mrs. Maude Jameson in Nevada. Mrs. Jameson apparently operated a boarding home for the care of aged and ill persons and represented herself to be a "Swedish Masseuse." Dr. Love also saw decedent on May 4, 8, 9 and 10. He stated that she was suffering moderate pain but was in good mental condition until May 10. On that date she was "rather stuporous and not so clear mentally." She died on May 11, 1953.

On April 13, shortly after she was taken to the Jameson home, Miss Floyd sent for her attorney, Honorable A. E. Elliott, and gave him directions for the preparation of her will. The instrument was accordingly prepared and was signed by her the next day in the presence of Mr. Elliott and Mrs. Jameson. After execution the will was left with Miss Floyd who placed it in a little satchel. The will provided that her real estate be devised to her sister, Kathleen Floyd Welpton, for her natural life. The remainder in an 80 acre tract was devised to the Methodist Orphans Home Association of St. Louis, and the remainder in an undivided one-half interest in another 80 acres was devised to the Methodist Church of Nevada. Mrs. Welpton was the sole heir of her sister and hence is the defendant herein. The will did not purport to bequeath any personal property.

After the death of Phenia Floyd, a search was made among her personal effects but the will was not found. Mr. Elliott had kept a copy of the will and plaintiffs sought to have the same established and probated, but the court rejected said instrument as the last will and testament of said deceased. Thereafter, this suit was instituted to establish the rejected will. The theory upon which plaintiffs seek relief is clearly stated in the following paragraph of their petition: "5. That said last will and testament has been lost, or has been destroyed, without the knowledge or consent of said Phenia Floyd, deceased, or that said destruction,

if in fact accomplished, came about as a result of mistake of law or fact on the part of said Phenia Floyd, deceased, or as a result of undue influence exercised upon the mind of Phenia Floyd, deceased, while she was ill and physically and mentally incapacitated, by persons who were in a confidential relationship with her."

On May 4 and 6, Miss Floyd executed deeds which purported to convey the tracts of land in question to Mrs. Jameson. They were set aside, because of the undue influence of Mrs. Jameson and the absence of any consideration, upon a suit instituted by Kathleen Welpton. The decree was affirmed by this court. Welpton v. Jameson, Mo.Sup., 266 S.W.2d 594. It may also be noted that Mrs. Jameson, upon presentation of a check purportedly signed by Miss Floyd, withdrew all of the money decedent had in the bank ($1,283.44) and also took possession of some of the personal property she had left on the farm.

Phenia Floyd seemed to be in doubt as to the final disposition of her property. At the time she signed the will she stated to Mr. Elliott that she might want to change it and asked if such could be done. He advised her that she could destroy it at any time and if she wanted a different will written he would prepare one for her. Sometime between April 14 and May 7 she had her old friend, W. B. Story, read the will, and asked him what he thought of the provisions. On May 7, in the presence of his daughter-in-law, she told Story that she hadn't sold the farms; hadn't deeded anything and wasn't "about" to; that she wanted the property to go as provided in the will. He testified that she had been a school teacher most of her life and that on May 7 she was "pretty perk—brighter than she was at other times." Hattie Fredericks, who lived with decedent for about six months before her injury, stated that Miss Floyd told her on May 8 that she had not sold the property. She went back to visit the next day and Mrs. Jameson would not let her in. She also related that Mrs. Jameson had been out to the farm and had taken a shoe box full of decedent's papers. Harry Angel, whose mother also

lived at the Jameson home, testified that he visited with Miss Floyd about a week before she died and that she stated that she was going to destroy the will so she could deed the property to Mrs. Jameson. Mrs. Jameson was present at the trial but was not called as a witness by plaintiffs.

■ In this case it is conceded that Miss Floyd duly executed the will and was, at the time, of legal age and sound mind. It is also clear that she had the will in her possession and that after her death it could not be found, although diligent search was made therefor. In this situation the rule is well established that there is a presumption that the decedent destroyed the will with the intent to revoke it. Hamilton v. Crowe, 175 Mo. 634, 75 S.W. 389; McMurtrey v. Kopke, Mo.Sup., 250 S.W. 399. However, this presumption is rebuttable and may be overcome by competent and satisfactory proof. It is for this reason that it has been held proper to receive in evidence the declarations of the decedent tending to show the continued existence of the will. McMurtrey v. Kopke, supra.

Defendant relies principally upon the Hamilton case in support of the action of the trial court in directing a verdict in her favor. In that case it was held that proof that the will was in existence and in the possession of decedent a short time before her death was not sufficient to create a jury issue on the question of the existence of a valid, unrevoked will, as such evidence alone was not enough to rebut the aforementioned presumption and hence the trial court should have directed a verdict for defendants.

The case of McClellan v. Owens, 335 Mo. 884, 74 S.W.2d 570, 95 A.L.R. 711, is cited by plaintiffs in support of their contention that the evidence was sufficient to create a jury issue. In that case the will was shown to have been in testator's safe three days before his death. On the night of testator's death his brother (an heir who would benefit from destruction of the will) took the safe to his home. The next day he obtained the services of a safe expert and caused him to open the safe. He later was required to return the safe but did not disclose to the executors or the probate court that he had opened the safe and examined its contents, but, in fact, denied having done so. This evidence was held sufficient to support a verdict establishing the will.

■ In considering the sufficiency of the evidence herein, we deem it our duty to consider as true all evidence tending to establish the will as a valid, unrevoked instrument and accord to such evidence all favorable inferences reasonably arising therefrom. Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135.

■ When we consider the evidence in the light most favorable to plaintiff, the most that can be said is that it establishes the existence of the will on May 7, and no intention on that date to revoke or change it. This was three days before decedent became incompetent. This factual situation is far from analogous to that shown in the McClellan case. As we have already indicated, there was present in that case additional evidence and corroborating circumstances which, when considered in connection with the declarations of the testator, were properly held to be sufficient to take to the jury the question as to whether the deceased destroyed the will with intent to revoke it. No such additional evidence was presented in the instant case. The only person who would benefit from a destruction of the will was the defendant. She was confined to her bed by illness during the time in question and had no access to the will. Plaintiffs intimate that Mrs. Jameson may have destroyed the will. There is no evidence to indicate that she did and she had no legal cause to do so. It might be that she thought it was necessary to dispose of the will in order to make the deeds effective, but to permit the jury to find that Mrs. Jameson destroyed the will for that or any other reason would be authorizing a verdict based upon conjecture and guesswork. We rule as a matter of law that plaintiffs failed to adduce substantial evidence sufficient to authorize a jury reasonably to find that the presumption that decedent destroyed the will with intent to

revoke it was rebutted. Hamilton v. Crowe, supra.

Next, plaintiffs contend that, even if Miss Floyd destroyed the will with intent to revoke it, such was done under a mistake of law or fact and hence not effective. This is based upon the following testimony of Harry Angel:

"Q. When was the last time you saw her? A. Well, I don't remember the exact date but it was about a week before she passed away. * * *

"Q. The last time you saw her did you have any conversation with Phenia Floyd about the disposition of her property? A. Yes, I did. There was a conversation about her property and about a will.

"Q. Tell the jury what that was. A. Well, she said that she had a will that was made to the Methodist Home and that she was going to destroy the will.

"Q. She was going to destroy the will? A. That's right.

"Q. Did she say why she was going to do that? A. So she could deed the property to Mrs. Jameson."

 Our task upon this appeal is to determine whether the evidence just detailed is sufficient to invoke the doctrine of dependent relative revocation. This doctrine is well stated in the annotation appearing in 62 A.L.R. 1367, 1401, as follows: "When a will, or portions thereof, are canceled or mutilated in order to change the will in whole or in part, and the attempt fails for want of due authentication, or other cause, this effort to revoke in whole or in part will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the attempted disposition is inoperative, the revocation fails also, and the original will remains in force. This rule is styled the doctrine of dependent relative revocation. It is based upon the presumption that the testator performed the act of revocation with a view and for the pur-

pose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged, in the absence of any known and sufficient reason for changing them." See other extensive annotations in 115 A.L.R. at page 721, and 24 A.L.R.2d at page 554.

In Flanders v. White, 142 Or. 375, 18 P.2d 823, 827, the rule is stated in the following manner: "Based upon our review of the authorities, we conclude that if a deceased's acts in destroying his present will and his substitution of a new means for the distribution of his estate are accompanied with circumstances that indicate the two acts are parts of one plan, and that the will was not destroyed so as to render the deceased intestate, but for the purpose of making way for the new means, then the law will regard the two acts as dependent upon and related to one another. Hence if the second act, through incompleteness or other defect, fails to accomplish its intended purpose, and it thereby becomes evident that the testator was misled when he destroyed his will, the principle of law under consideration regards the act of destruction as bereft of an intent of revocation and thus opens the way for the destroyed will to be admitted to probate."

The doctrine originated in England where it has long been widely applied. It has been adopted by most courts in the United States. (See annotations cited.) In Missouri the rule was first recognized in the case of Banks v. Banks, 65 Mo. 432. In that case this court refused to apply the rule because the view was taken that, under the evidence, the revocation did not appear to be conditioned upon the efficacy of the subsequent will. However, the doctrine was approved and followed in Varnon v. Varnon, 67 Mo.App. 534, and Woodson v. Woodson, 363 Mo. 978, 255 S.W.2d 771. The usual situation wherein this principle is applied is where the deceased had sought to

substitute a subsequent will for one previously executed and the second instrument is invalid. However, the doctrine is not limited to instruments of a testamentary character but has been applied in varying situations. See Re Southerden, 14 B.R.C. 206, and Flanders v. White, supra.

In the instant case the will only purported to dispose of the real estate in question. This was subsequently deeded to Mrs. Jameson. It is obvious that when these deeds had been executed and delivered (assuming they were valid) the will was emasculated and it is easy to understand why Miss Floyd may have destroyed it with intent that it be revoked. However, the deeds were subsequently set aside in an action instituted by Mrs. Welpton against Mrs. Jameson. In this situation, should the doctrine of dependent relative revocation apply?

■ In our review of this case we must accept as true the testimony of Harry Angel. When so viewed we need not speculate as to why Miss Floyd destroyed her will. She stated that she was going to do it "so she could deed the property to Mrs. Jameson." We regard it immaterial as to whether she was under the erroneous impression that she had to revoke the will in order to make a valid deed or whether she destroyed the will because there was nothing left upon which it could be operative, although the former would appear to be the more reasonable inference to be drawn from this testimony. The important element is that the evidence would justify a finding that the revocation of the will and the execution of the deeds were related acts and parts of one plan which had as its objective the substitution of a new method of disposing of the real estate.

We have concluded that the testimony of Angel, when considered in connection with the other evidence, was sufficient to require a submission of the case to the jury and hence the court erred in directing a verdict for defendant. If the jury believed this evidence it would support a finding that the destruction of the will was directly related to the making of the deeds and conditional upon their validity. Upon a retrial, if the jury should find that the destruction of the will was intended to be an absolute revocation, it should return a verdict that the paper writing in evidence was not the last will of Miss Floyd. On the other hand, if it be found that the destruction of the instrument was solely attributable to the execution of the deeds and not for the purpose of causing the real estate to descend under the statute of descent and distribution, then the verdict should be to the effect that the paper writing was the last will of Phenia Floyd.

■■ Plaintiffs offered in evidence the trial court's finding of facts, decree, and the mandate and opinion of the Supreme Court in the case of Welpton v. Jameson. They contend these documents and records were admissible on the issue of whether decedent destroyed the will as the result of mistake of law or fact and on the issue of whether it was destroyed as a result of the undue influence of Mrs. Jameson. We do not think the authorities cited by plaintiffs sustain this contention. Moreover, plaintiffs do not point to any portion of said exhibits that would constitute an estoppel or an admission against interest by defendant.

We have concluded that the trial court ruled correctly in sustaining the objection to this evidence. Since we have held that the doctrine of dependent relative revocation is applicable herein, it is of course true that the jury was entitled to know that the deeds were made and that they were subsequently set aside. However, it was not necessary to admit in evidence any of the records under consideration in order to accomplish that objective as defendant clearly and unequivocally admitted these facts in open court. There being a lack of identity of parties, none of these records in the deed case would be admissible to prove any other issue in the instant case. It is a general rule that if a judgment is admissible at all upon any question of fact involved, it will be considered conclusive. If there is a lack of identity of parties (in-

cluding privies) so that the judgment is not conclusive, it will not be admitted at all. Geo. Birrell, Inc., v. Fidelity & Casualty Co., 193 Iowa 860, 188 N.W. 26; Chadima v. Kovar, 168 Iowa 385, 150 N.W. 691; Keeton v. National Union, 178 Mo.App. 301, 165 S.W. 1107; Town of Bethlehem v. Town of Watertown, 51 Conn. 490; State v. Bradnack, 69 Conn. 212, 37 A. 492, 43 A.L.R. 620. In Jones, Commentaries on Evidence (2d Ed.), Vol. 4, Section 1814, at page 3366, the author, after reciting that strangers to a cause may not be prejudiced by a judgment rendered therein, states: "And the converse rule is equally true; the stranger who is not bound by a judgment cannot avail himself of it for his own benefit. As illustrations of the general rule that judgments are not admissible except between parties or privies to the action, it has been held that, in an action for slander against a husband, a judgment in a former action between the plaintiff and the husband and wife for the same slanderous words could not be received. Similarly, in an action by a town against a husband for support furnished the wife, a judgment in a divorce suit is not admissible on the issue whether she was justified in leaving him. A judgment in favor of the defendant in an action by a wife to recover damages for personal injuries is not conclusive in favor of the defendant in an action against it by the husband to recover for damage personal to him arising out of the injuries to the wife. And likewise a judgment in the wife's favor in such a suit is not conclusive in a subsequent action by the husband as to the negligence of the defendant, or as to the freedom of the wife from contributory negligence."

The judgment is reversed and the cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM: The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.