477 F.2d 319
 JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Plaintiff,
v.
Sheryl Denise JACKSON, Appellant, Gwendolyn Wilkinson,
Appellee, Anna L. Ray, Administratrix of the
Estate of Glasco P. Ray, Deceased et
al., Defendants.
 No. 72-1460.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1973.
Decided April 20, 1973.
Rehearing Denied May 16, 1973.
 
 1
 William F. Maurer, Kansas City, Mo., for appellant.
 
 
 2
 Bruce Ricker, Kansas City, Mo., for appellee.
 
 
 3
 Before GIBSON and ROSS, Circuit Judges, and BENSON,* District Judge.
 
 
 4
 BENSON, District Judge.
 
 
 5
 This case comes to us on appeal from a judgment and decree entered June 26, 1972, in the above action brought under Title 28, Section 1335, United States Code, wherein the District Court awarded life insurance proceeds, previously tendered by the insuror, John Hancock Mutual Life Insurance Company, into the court's registry, to the guardian of Appellee Gwendolyn Wilkinson.
 
 
 6
 One Glasco P. Ray, (Ray), an employee of the Ford Motor Company, by virtue of his employment, became an insured under the Ford Motor Group Life and Accident Death Insurance Policy No. 17-GCC, issued by the John Hancock Mutual Life Insurance Company, and maintained for the benefit of Ford Motor Company employees. The evidence of coverage was contained in a 29 page certificate-booklet furnished him, which described the Ford Motor Company Employee's Life and Disability Insurance Program. Ray had the right to name the beneficiary and to change the beneficiary at any time. This was accomplished by filing an application form with the insurance company.
 
 
 7
 On October 28, 1968, Ray completed the application form and named his half sister, Gwendolyn Wilkinson, as beneficiary. On April 25, 1969, Ray attempted to change the beneficiary by completing a new application form, naming one "Shirley Ray (Wife)", as beneficiary. Ray died on July 21, 1969, and the proceeds of his coverage under the group policy became payable.
 
 
 8
 Both application forms contained the following printed provision:
 
 
 9
 "I revoke all previous beneficiary nominations, together with any settlement elections and make the above nomination of beneficiary with respect to all insurance provided now or at any time in the future under the above Group Insurance Policies still reserving to myself the privilege of making other and further changes subject to the Policy provisions. If more than one beneficiary is designated, settlement will be made in equal shares to such of the designated beneficiaries (or beneficiary) as survives me, unless otherwise provided herein. If no designated beneficiary survives me, settlement will be made as provided in the policies."
 
 
 10
 The certificate-booklet contained, on page 9, information on beneficiary designation as follows:
 
 
 11
 "You have the right to name the beneficiary of your choice, and to change your beneficiary at any time. The beneficiary is that designation you have last made as indicated on the records of the Insurance Company. In the event the last named beneficiary dies before you, or if no beneficiary shall have been named, the life insurance will be paid to your wife or husband, if living; if not living, equally to your surviving children; if none survive, to either your mother or father, or to both equally if both survive; if there are no such survivors, to the executor or administrator of your estate."
 
 
 12
 Glasco P. Ray had never married. Although at least two persons by the name of Shirley were shown to have been friendly with Ray, the District Court found the evidence was not sufficient to establish who was the subject of Ray's second application. The court found the second designation to be void, and applied the doctrine of dependent relative revocation, holding the prior designation of Gwendolyn Wilkinson, as beneficiary, had not been revoked.
 
 
 13
 The appellant, Sheryl Denise Jackson, was found by the court to be the natural daughter of Glasco P. Ray. She claims a right to the policy proceeds under the provisions of the contingent beneficiary clause contained in the certificate-booklet hereinbefore set out. It is appellant's position that the District Court erred in applying the doctrine of dependent relative revocation. Appellant submits that the record does not show Ray's intent in changing the designation, and similarly there is no showing of any dependent connection between the revocation of the first beneficiary and the designation of the second.
 
 
 14
 Under the doctrine of dependent relative revocation, if a testator cancels a will with the present intention of making a new one as a substitute, and the new will is not made, or if made, fails for any reason, it will be presumed that the testator preferred the old will. 57 Am.Jur. Wills Sec. 514. The rule is based on the assumption that the testator revoked the prior will with the express intent of creating a new one. Anno. 62 A.L.R. 1367, 1401, 115 A.L.R. 710, 721. The Missouri Court of Appeals, St. Louis, in Sims v. Missouri State Life Ins. Co., 223 Mo.App. 1150, 23 S.W.2d 1075, 1077 (1930), early announced that where the beneficiary designation in an insurance policy is questioned, the language of the policy is to be treated as testamentary in character, and should be given the same interpretation as if the instrument were a will.[1]
 
 
 15
 In 1955, the Missouri Supreme Court recognized the doctrine of dependent relative revocation and put forth as a basis for the doctrine, the presumption that had the testator known his second beneficiary designation would become invalid, he would have wished his property disposed of as expressed by his original will. Board of Trustees of Methodist Church v. Welpton, 284 S.W. 2d 580, 584 (Mo.1955). The basic rule of construction to be found throughout the cases and annotations, with regards to giving operative effect to the doctrine is that the testator's intentions must be ascertained and upheld.[2]
 
 
 16
 The purpose of the doctrine is to give effect to the testator's true intent. The determination of whether to apply the doctrine turns upon whether the testator's intention was to revoke the first designation to make effective a new designation or to revoke the first regardless of the effectiveness of the subsequent designation. The doctrine, then, should not be blindly applied in all instances where an invalid beneficiary designation exists.
 
 
 17
 If, by its application, the doctrine would operate to defeat the real intent of the testator, it should not be applied. Mort v. Trustees of Baker University, 229 Mo.App. 632, 78 S.W.2d 498, 501 (1935). This case set out as one indicia of intent the instruments themselves. ". . . The testator's intention must be ascertained, if possible, from the four corners of the instrument . . ." An examination of the certificate-booklet and the two beneficiary forms discloses only an intention to change the beneficiary designation. No clear presumption of intent can be ascribed to either the revocation clause or the contingent beneficiary clause. Both of these clauses were standard form phrases that lack the probative value on the question of intent attributed to similar clauses as found in a formal will. There is every probability that a potential insured would not even be aware of the contingent beneficiary provision found on page 9 of the certificate-booklet. The beneficiary designation form and the contingent beneficiary clause seem to be independent of each other. As a consequence, any inferences to be made as to Glasco P. Ray's testamentary intent must arise from evidence other than the instruments themselves. Under Missouri law, if the instrument itself is ambiguous, or if the description is imperfect, the court may resort to extrinsic evidence for the purpose of ascertaining the intended meaning. Here, the designation of "Shirley Ray (Wife)" renders both instruments, when read together, imperfect and ambiguous.
 
 
 18
 "The cases hold that, in the construction of a will, where the purpose is to determine a beneficiary thereunder, it is the primary duty of the court to give effect to the intention of the testator as expressed in his will, if the same is not contrary to law or against public policy, and not to put such a construction thereon as will tend to substitute the court's own ideas or motions for those of the testator; and that, where any doubt or uncertainty arises as to the testator's intention, extraneous facts will be admissible to explain the language used, regardless of whether the ambiguity be a patent or a latent one, since the court is entitled to be placed in possession of all available information of the circumstances surrounding the testator when he made the will . . .
 
 
 19
 Of course it must be understood that such extrinsic evidence is admissible, not for the purpose of contradicting or varying the terms of the will, but solely for the purpose of ascertaining the testator's true intention from the language used . . ." (Citations and footnotes omitted). (Emphasis added). Sims v. Missouri State Life Ins. Co., 223 Mo.App. 1150, 23 S.W.2d 1075, 1078 (1930).
 
 
 20
 In this posture, then, the District Court gave consideration to the surrounding circumstances and conditions existing at the time Glasco P. Ray executed the second beneficiary form. There was extrinsic evidence before the court that Ray was a heavy drinker; that he was not married at the time of his death, nor had he ever been married; the specific identity of the person designated "Shirley Ray (Wife)" could not be determined; Ray had always been close to his half sister, Gwendolyn Wilkinson, the appellee herein; he had not been affectionate nor had he been close to his daughter, Sheryl Denise Jackson, the appellant; the designation of "Shirley Ray (Wife)" was a manifestation of some sort of mental incapacity.
 
 
 21
 The evidence is sufficient to support the District Court's conclusion that had Ray known the intended disposition would be inoperative, he would have preferred the prior designation be given effect. The revocation of the first beneficiary designation was conditional upon the validity of the second.
 
 
 22
 The judgment of the District Court is affirmed.
 
 
 
 *
 Judge Benson, Chief Judge of the District Court of North Dakota, sitting by designation
 
 
 [1]
 See generally Anno. 24 A.L.R. 750
 
 
 [2]
 See Anno. 24 A.L.R. 750, 62 A.L.R. 1367, 115 A.L.R. 710, 28 A.L.R.2d 521, 95 A.L. R.2d 1256