MARY ANN LOKAN, RAMONA ELAINE LOKAN-JOHNSON, and ANTHONY WAYNE LOKAN, Plaintiffs

v.

FELETI M. LOKAN and GEORGE C. STOUT, Co-administrators of the Estate of GEORGE PHILIP LOKAN, Deceased, Defendants

High Court of American Samoa
Trial Division

PR No. 15-86

October 19, 1987

Before REES, Chief Justice, VAIVAO, Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiffs, William Reardon
         For Defendants, Roger Hazell

Opinion and Order on Motion for Summary Judgment:

George Philip Lokan died in 1986 and left what appears to be a will bequeathing all his assets to "my wife Lavinia Lokan to be used for the general well being of herself and our [adopted] children, Leilani, Eivoni, Sefo, and Feleti."

Plaintiffs, the first wife of George P. Lokan and the two adopted children of his first marriage, seek inter alia to deny the admission of the will to probate.

45

For the purpose of deciding plaintiffs' motion for summary judgment we must assume the truth of the evidence presented thus far by defendants and draw from the facts in evidence the inferences most favorable to defendants. We therefore assume that the document was meant by George Lokan to be his last will and testament; that he kept it in his safe with other valuable documents until he died; that the various markings that were made on the document represent his attempts to "update[] his will with interlineations as various CD's matured or his property changed" (Affidavit of Louina Apted); and therefore that during the several years prior to his death he remained constant in his intention to bequeath all of his assets to Lavinia for her well-being and that of their four adopted children.

Plaintiffs allege first that as a matter of law the document "does not evidence the requisite testamentary intent" to be enforced as a valid will. Even without reference to extrinsic evidence, however, the document clearly manifests such intent. Lokan wrote or caused to be written, "I, George Lokan do declare that the following list represents my assets" and "I further declare that in case of my death these assets become the property of my wife to be used for the general well being of herself and our children . . . .". He then added a "wish" that one of his sons oversee the operation of a certain business, and instructed the son "to seek the advice" of a named individual in business matters. After listing his known assets, he signed the document and had it witnessed by two persons. The only formal requirements for a will in American Samoa are that it be in writing, signed, and witnessed by two persons. A.S.C.A. § 40.0102. No such legal requirement is imposed on anyone who wishes merely to list his assets and make some informal predictions and wishes about what is likely to happen when he dies, and it is hard to imagine anyone taking the trouble to have such a statement witnessed. If anything, Lokan manifested his intent far more clearly in this document than he could have done by putting his signature on a more elaborate document obtained by an attorney from a form book.

A more substantial objection to the validity of the will has to do with the changes that were made on the face of it during the years between its

46

attestation and Lokan's death. Such changes, as counsel for plaintiffs correctly observes, must be attested if they cause a "new and distinct testamentary disposition." Oliver v. Union Nat'l Bank of Springfield, 504 S.W.2d 647 (Mo. App. 1974). Handwritten alterations on a formal will can become a "holographic codicil" in jurisdictions allowing for holographic wills as an alternative to the requirement of attestation, but only if the testator has satisfied the strictly observed requirement that the alterations be signed and dated. See Estate of Nielson, 165 Cal. Rptr. 519 (Cal. App. 1980). We need not decide whether A.S.C.A. § 40.0102 implicitly denies the validity of holographic wills in American Samoa, since Lokan neither signed nor dated the alterations to his will.

We disagree, however, with the contention of plaintiff's counsel that the effect of the attempted alterations was to revoke the bequest to Lavinia and divert some or all of the assets bequeathed in the original will to those who would have been his heirs if he were intestate. Under the doctrine of "dependent relative revocation," when a testator attempts to change a provision in his will and the attempted change is deemed invalid, the original provision remains in full force unless it appears that the testator would have preferred a simple deletion of this provision to its unmodified enforcement. See Oliver, supra, 504 S.W.2d at 651. In this case the evidence, at least as we must construe it for the purposes of this motion, is all to the contrary. The changes were apparently attempts to update the will so that Lavinia and the children of the second marriage would receive new assets; under the doctrine of dependent relative revocation, the invalidity of these changes should not deprive their intended beneficiaries of whatever they would otherwise have received. Insofar as any provision of the original unaltered will purports to bequeath to Lavinia anything that George Lokan still owned when he died, such provision would seem to be valid whether or not he attempted to alter it.

This does not exactly dispose of plaintiffs' contentions, however, for most of the alterations apparently occurred when Lokan traded in a matured certificate of deposit for a new one with a different number and in a larger amount. The certificates of deposit originally bequeathed are

47

no longer part of the estate. The usual rule is that when the thing devised passes out of the estate before the testator's death it "adeems," leaving the devisee with no right to it or to the equivalent value in money or other property. See Atkinson on Wills § 134 at 742 (2d ed. 1953).

If, however, the thing devised has changed in name or in form only, there is no ademption and the devisee is entitled to the new thing whether or not the testator has explicitly manifested such an intention. See id. § 134 at 747; Estate of Austin, 169 Cal. Rptr. 648 (Cal. App. 1980). In Austin the testatrix bequeathed a promissory note. Before her death the note was paid in full and the testatrix invested the proceeds (and some other money) in another promissory note. The bequest was held not to have adeemed. The designated recipient was entitled to receive the repayment of the second note (but only to the extent of the value of the first note).

Some courts would go even further, giving a devisee the whole value of a thing that was apparently regarded by the testator as a substitute even where this new thing cannot easily be regarded as a mere modification of the old. See, e.g., Estate of Shubin, 60 Cal. Rptr. 678 (Cal. App. 1967), where testator had bequeathed his house which was, however, condemned by the government. Testator took the proceeds plus some other money, bought a new house, and wrote its new address on his will in place of the old address without attesting the alteration. The court took this as conclusive evidence that the testator did not intend the devise to adeem, and the devisee took the second, more valuable house.

Shubin and other cases represent an apparent return to the classic rule that ademption takes place only in the absence of a contrary manifestation of the testator's intent. See Atkinson, supra, § 134 at 741-42. After a trial on the merits of this case, when we will presumably know whether the new certificates of deposit were purchased solely with the proceeds of the old or whether other funds were added, we may have to choose between this one and the contrary "non-intentionalist" rule that prevailed in 1953 when our edition of Atkinson was printed. (Such a choice may also be forced on us by whatever the facts turn out to be behind original item 16 and

48

attempted item 17 of the will: "16. Dwelling at Houmakelikao, Tonga being sold to Flemming H-jelson" is crossed out with the notation "Sold and paid in full," and "17. 115' by 274' Landsite at Golf Course" is written in.) Even under the more restrictive rule, however, the new certificates of deposit would appear to devolve upon the beneficiaries of the old to the extent they were purchased with the proceeds.

Finally, the question of ademption may be mooted by the apparent intention of George Lokan to devise all of his property to Lavinia. When there is a general devise, property acquired after the execution of the will also passes to the devisee. See Atkinson §§ 132, 134 at 733-34, 742. There appears to be a general devise here. Since defendants have not moved for summary judgment and since the issue has not yet been addressed by either party, we defer consideration of whether this apparently dispositive datum might be overwhelmed by extrinsic evidence or otherwise.

The motion for summary judgment is denied.